(No. 69318.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. STANTON D. ERNEST, Appellant.

*Opinion filed December 20, 1990.*

Stanton D. Ernest, of Fowler, Rhine & Ernest, of Mt.

Carmel, appellant *pro se.*

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Richard S. London, Assistant Attorneys General, of Chicago, of counsel), for the People.

Robert L. Douglas and Fred W. Johnson, of Robinson, *amici curiae.*

JUSTICE MILLER delivered the opinion of the court:

In a proceeding in the circuit court of Wabash County, the defendant, Stanton D. Ernest, an attorney licensed to practice law in the State of Illinois, was found to be in direct criminal contempt and fined $50 after he caused a subpoena for a discovery deposition to be issued to the judge presiding in a case in which the defendant was appearing as counsel. The appellate court, with one justice dissenting, affirmed the contempt finding. (188 Ill. App. 3d 987.) We allowed defendant's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The present matter arises from and is collateral to certain proceedings before the circuit court of Wabash County concerning the administration and settlement of the estate of Merrill H. Wright. A brief review of the proceedings in the underlying action will provide relevant background for the disposition of this appeal.

Merrill H. Wright died testate on January 30, 1986. His will, which made cash bequests in excess of $300,000 to various individuals and nonprofit organizations, was later admitted to probate in the circuit court of Wabash County. On October 8, 1986, Richard O. Wright, the executor of the estate, and his attorney, Rick L. Hobler, appeared before the Honorable Robert M. Keenan for a hearing on the final account of the estate. The executor represented in the final account that the estate con-

tained less than $98,000 available for distribution, an amount that was not sufficient to fund totally the testator's individual bequests. The executor proposed to distribute the estate by fully satisfying the bequests contained in each succeeding paragraph of the will until the available funds were exhausted. Under the proposed scheme, a number of general bequests contained in later paragraphs of the will would go completely unsatisfied. Notice of the hearing on the final account had been provided only to those beneficiaries who were to receive funds under the executor's proposal.

The trial judge entered a written order on October 8, 1986, approving the proposed distribution. The docket sheet for that date contains the following notation: "Executor and counsel appear, no objections filed, no objectors present; account examined and approved per written order signed and filed." No report was made of the proceeding.

On November 7, 1986, defendant filed a petition in the circuit court of Wabash County seeking to reopen the estate. (See Ill. Rev. Stat. 1987, ch. 110½, par. 24—9.) The defendant filed the petition on behalf of a number of beneficiaries whose bequests had not been funded under the distribution plan previously approved by the court. An amended petition alleged, among other things, that the final distribution was made without notice to all interested parties, that the testator's attorneys-in-fact, one of whom was the executor, had misappropriated assets of the estate, and that the executor wrongfully failed to abate the bequests by distributing the assets of the estate proportionately among the general legatees, as required by statute (see Ill. Rev. Stat. 1987, ch. 110½, par. 24—3(b)).

On March 17, 1987, defendant filed a motion for substitution of judge pursuant to section 2—1001(a)(1) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110,

par. 2—1001). The motion alleged that Judge Keenan was a material witness to the proceedings on the final account of the estate. At a hearing before Judge Keenan on March 24, 1987, defendant asserted that investigation was needed to determine whether any fraudulent misrepresentations were made at the October 8, 1986, hearing that would have prompted the court to approve the executor's proposed distribution. Defendant asserted that Judge Keenan's testimony regarding the hearing would be material. Defendant noted that no record of the hearing was available and that, to his knowledge, the executor and the executor's counsel were the only persons other than Judge Keenan who were present at the hearing.

Judge Keenan denied the motion for substitution of judge. He observed that the docket entry for the October 8, 1986, proceeding did not indicate that evidence was introduced or arguments were made on that occasion and, further, that the petition to reopen the estate contained no allegations of fraud. Judge Keenan believed that permitting a litigant to call as a witness the judge who was presiding over a matter could lead to disqualification in almost every case, for a party might call the judge to testify whenever a dispute arose about events occurring in the courtroom. Finally, Judge Keenan noted that defendant, as the movant, had failed to present authority in support of his position. At the conclusion of the hearing Judge Keenan stated:

> "I don't believe that it would be proper in this case for either of the parties to issue a subpoena for a Judge in this situation, and unless you can show me some authority that it would be proper, and that the Courts have sanctioned that in the past, then I'm not in a position to grant this. The motion is denied."

Defendant then asked whether he could cite authority, but the judge replied that the motion had been denied.

On the following day, March 25, 1987, defendant appeared in Judge Keenan's courtroom at the judge's request. According to the transcript made on that occasion, upon defendant's arrival, Judge Keenan stated that he had learned of the issuance of a deposition subpoena directed to him. Judge Keenan explained that he denied defendant's motion for substitution of judge because there is no authority to support the view that a party may request testimony from the judge who is presiding over the party's case. In response to Judge Keenan's questions, defendant acknowledged that he was aware of the basis for the court's ruling on the substitution motion, and defendant admitted that he had caused the subpoena to be issued with full knowledge of the basis for the ruling on the motion. Judge Keenan told defendant that issuance of the subpoena was "directly contrary to both the spirit and intent" of the ruling denying the substitution motion. The judge then afforded defendant an opportunity to withdraw the subpoena and stated that defendant would be cited for contempt if he refused. Defendant replied, "I won't withdraw it, so you might as well do that." Judge Keenan then ordered the discovery subpoena quashed and informed defendant that a formal contempt citation would be issued.

Judge Keenan thereafter issued findings and entered an order requiring defendant to show cause why he should not be held in contempt of court. The order charged defendant with committing a contumacious act in derogation of the court's authority. The order recited the relevant events that took place during the hearing held March 24, 1987, on the motion for substitution of judge and during defendant's court appearance on March 25, 1987. Judge Keenan referred the matter to the chief judge of the circuit for reassignment.

On April 28, 1987, defendant and his counsel appeared before the circuit judge to whom the case had

been assigned for the hearing on the contempt citation. At the beginning of the hearing, the judge noted the absence of a prosecutor and advised defendant that the court would not assume that role. In his testimony at the contempt hearing, defendant explained that he filed the motion for substitution of judge because he believed that Judge Keenan was a material witness to the October 8, 1986, hearing, when the executor's final account had been approved. Defendant explained that he believed that his clients could recover punitive damages if the executor were shown to have acted fraudulently. He also stated his belief that any judgment of that nature would not be dischargeable in bankruptcy. He further believed that without proof of fraud, his clients could not recover the distributions that had already been made to other beneficiaries from the assets of the estate. Defendant further testified that after the hearing on the motion for substitution of judge, he had prepared a subpoena for discovery deposition of Judge Keenan and caused it to be issued by the circuit clerk of Wabash County. Defendant explained that he pursued this course of action, rather than attempting to take an immediate appeal from the denial of the substitution motion, because the record was virtually devoid of any evidence of the materiality of Judge Keenan's testimony. Defendant believed that without Judge Keenan's deposition testimony he could not prevail in an appeal from the denial of the substitution motion.

Defendant also testified that he believed the motion was denied because he had failed to cite authority demonstrating that a party may call a presiding judge as a witness. Defendant had reasoned that the subpoena would prompt opposing counsel to file a motion to quash, which would have allowed defendant to respond with authority in support of his position. Finally, defendant testified that he believed that issuance of the subpoena

would preserve for appeal the issue of whether he could call Judge Keenan to testify about what occurred at the October 8 hearing.

At the contempt hearing, defendant also presented the testimony of an attorney who frequently practiced before Judge Keenan. The attorney described Judge Keenan as meticulous and stated that it was Judge Keenan's custom to follow rules of procedure carefully, even in uncontested matters. The witness stated that in probate matters Judge Keenan often asks personal representatives or their counsel for more information, or confers with them on matters at issue, frequently off the record. The trial judge then heard summation by defendant's counsel and granted defendant leave to submit a post-hearing memorandum.

On May 26, 1987, the trial judge issued a written opinion finding defendant in contempt of court. The trial judge reasoned that because the denial of the motion for substitution of judge was based on Judge Keenan's belief that he was not a material witness to the controversy, defendant's actions in causing the discovery subpoena to be issued were sufficiently embarrassing and disruptive to constitute contempt. The trial judge further believed that defendant's claim of good faith was irrelevant. At a later hearing, the judge fined defendant $50.

Defendant subsequently filed a motion for a new hearing, challenging the sufficiency of the evidence and the adequacy of the procedures employed at the hearing. The trial judge denied the defendant's motion. In a memorandum of opinion, the judge stated that defendant's conduct constituted direct criminal contempt and that the procedures followed at the contempt hearing were adequate. The trial judge also found that the announcement by Judge Keenan that he did not believe it would be proper for either party to issue a subpoena amply preserved a record on which defendant's clients

could base an appeal. Defendant was thus not justified in causing the circuit court clerk to issue the subpoena for Judge Keenan's discovery deposition.

The appellate court, with one justice dissenting, affirmed the circuit court's judgment. (188 Ill. App. 3d 987.) The court concluded that defendant's conduct was contumacious. The court believed that a judge could not be a witness in a case in which he is presiding and that defendant's actions in securing the issuance of the discovery subpoena therefore tended to embarrass and obstruct the court in its administration of justice. The appellate court also rejected defendant's contention that the contempt proceeding did not comport with due process, concluding that adequate procedures were employed at the hearing. 188 Ill. App. 3d at 990-92.

The dissenting justice agreed with the majority's conclusion that a judge should not testify in a proceeding over which that judge is presiding. The dissenting justice emphasized that the subpoena here was issued solely for the purpose of taking the presiding judge's discovery deposition, however, and that the judge's testimony might not have been required at trial. The dissenting justice believed that the majority's result would always place a trial judge beyond the reach of discovery processes, regardless of the circumstances. The dissenting justice therefore would have reversed the trial judge's finding of contempt. 188 Ill. App. 3d at 993 (Harrison, J., dissenting).

Before this court, defendant, appearing *pro se*, argues that it is proper for an attorney to request the issuance of a subpoena for a discovery deposition to a judge presiding in a case, and that such conduct therefore is not contumacious. The defendant alternatively contends that the hearing provided to him failed to comply with the requirements of due process. The Law Offices of Robert L. Douglas, Ltd., which replaced defendant as

counsel in the underlying action, have been granted leave to submit a brief as *amicus curiae* in defendant's behalf (see 107 Ill. 2d R. 345).

I

A court has the inherent power to punish, as contempt, conduct that is calculated to impede, embarrass, or obstruct the court in its administration of justice or derogate from the court's authority or dignity, or to bring the administration of the law into disrepute. (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 452.) A finding of criminal contempt is punitive in nature and is intended to vindicate the dignity and authority of the court. (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 409.) Nonetheless, "its exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions." *Cooke v. United States* (1925), 267 U.S. 517, 539, 69 L. Ed. 767, 775, 45 S. Ct. 390, 396.

Defendant argues that his causing a discovery subpoena to be issued to Judge Keenan was not contumacious conduct. In support of this argument, defendant cites the provision in Supreme Court Rule 202 (107 Ill. 2d R. 202) that authorizes a party to "take the testimony of any party or person by deposition upon oral examination or written questions for the purpose of discovery or for use as evidence in the action." Defendant notes that the rule refers to the taking of the deposition "of any *** person," and he concludes that a judge presiding in a matter is within the scope of the rule.

In response, the State asserts that it was not defendant's isolated act of causing the subpoena to be issued that was found contumacious by the trial court. Instead, the State argues, the trial court found defendant's action contumacious in light of Judge Keenan's earlier ruling on the motion for substitution of judge. The State contends that defendant's subsequent request that the sub-

poena issue was tantamount to violating a direct order of the trial court. The State observes that criminal contempt may be found when a defendant has willfully disobeyed a lawful court order. See *Gompers v. Bucks Stove & Range Co.* (1911), 221 U.S. 418, 442-43, 55 L. Ed. 797, 806, 31 S. Ct. 492, 498-99.

We agree with the reasoning expressed by the appellate court in the present case that allowing a party to require a judge presiding in a case to testify or to submit to a discovery deposition in the proceeding, without the party's first asking leave to do so, would compromise the authority and dignity of the court. It is imperative that a court avoid situations where its impartiality might reasonably be questioned. Under our Code of Judicial Conduct, a judge is required to disqualify himself if he is "likely to be a material witness in the proceeding." (See 113 Ill. 2d R. 63(C)(1)(e)(iv).) We therefore cannot agree with defendant that Supreme Court Rule 202 grants to parties the unqualified right to subpoena a judge presiding over a matter to submit to a discovery deposition in the case. Such a finding would give the parties a powerful influence in the judge's decision whether to withdraw, and, as the appellate court stated, "would lead to the most obvious mischief." 188 Ill. App. 3d at 990.

Of even greater concern, however, is that defendant's allegedly contumacious conduct followed Judge Keenan's denial of the motion for substitution of judge. In causing the issuance of the subpoena, defendant acted in apparent defiance of Judge Keenan's reason for denying the substitution motion. Judge Keenan believed that it would be improper for any of the parties to subpoena the presiding judge in the case. We must conclude that by doing so, defendant's conduct disparaged the court's authority and dignity.

Defendant argues, however, that his actions were not directly contrary to Judge Keenan's order and were,

therefore, not contumacious. Defendant emphasizes that the only order issued by the judge during the proceeding was the denial of his clients' motion for substitution of judge; that order, defendant argues, did not direct him to perform or to refrain from performing any particular action. Citing *People v. Wilcox* (1955), 5 Ill. 2d 222, defendant argues that a person may be found in contempt for failure to obey a court order only when the order is clear, certain, and concise. In *Wilcox*, the trial court cited the defendant for contempt upon learning that she filed two motions with the clerk of the court after the judge allegedly denied her leave to do so. The defendant admitted on appeal that the judge refused to consider the motions, but she denied that the court instructed her that she could not file the documents. In reversing the contempt order, the court in *Wilcox* determined that "there is no showing in the record that an order was clearly given or understandingly received." *Wilcox*, 5 Ill. 2d at 229.

The situation here differs from that in *Wilcox*. Judge Keenan's explanation of his reason for denying the motion for substitution of judge might not, in itself, have constituted an order clearly given. Nonetheless, when defendant appeared before Judge Keenan the next day, defendant acknowledged that he understood the order. Judge Keenan stated that defendant's actions were directly contrary to both the spirit and intent of the earlier ruling and stated that defendant would be cited for contempt if he did not withdraw the subpoena. Only after defendant refused to do so did Judge Keenan issue the order to show cause. To allow defendant the ability to escape a contempt citation, when it is clear from the record that defendant understood the implications of his actions, merely because the order at first may have been ambiguous would significantly disparage the authority of the trial court.

A court must be presented with willful conduct on the part of the alleged contemnor before citing him for contempt. (*People v. L.A.S.* (1986), 111 Ill. 2d 539, 544.) A contumacious state of mind may be inferred from the actions of the party and from the surrounding circumstances. (See *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 61.) In the present case, defendant's refusal to withdraw the subpoena for Judge Keenan's discovery deposition after the judge stated that issuance of the subpoena was contrary to his previous ruling is sufficient to establish willful conduct on the part of defendant. Under these circumstances, the duty of counsel to safeguard the interests of his client does not permit indulgence in contumacious conduct.

Defendant also cites several cases that, he argues, recognize a judge as a competent witness of matters that took place before that judge in a former trial or proceeding of the cause. (See *People v. Washington* (1967), 38 Ill. 2d 446; *People v. Wilson* (1967), 37 Ill. 2d 617; *People v. Short* (1978), 66 Ill. App. 3d 172.) The propriety of Judge Keenan's order denying the motion for substitution of judge, however, is not before us. A court order made within the proper exercise of jurisdiction, no matter how erroneous, must be obeyed until the order is modified or set aside by the trial court or reversed on appeal. (*Cummings-Landau Laundry Machinery Co. v. Koplin* (1944), 386 Ill. 368, 385.) It may be noted that the cause before us does not present a situation where a defendant commits contempt of court by refusing to comply with an interlocutory pretrial discovery order, a method previously endorsed by this court as an appropriate means of challenging a trial judge's ruling. (See, *e.g.*, *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171-72.) Here, compliance with an erroneous order does not compromise the litigant's case.

As a final matter, defendant cites *Holt v. Virginia* (1965), 381 U.S. 131, 14 L. Ed. 2d 290, 85 S. Ct. 1375, and argues that the issuance of a subpoena for a discovery deposition is a right that cannot be denied by threat of contempt. In *Holt*, an attorney filed on his own behalf in a contempt proceeding a motion requesting that the trial judge disqualify himself and, after that motion was denied, filed a motion for change of venue. Both motions alleged bias on the part of the judge. The judge cited the attorney and his counsel for contempt after counsel read to the court the contents of the motion, which detailed the allegations of bias, during argument on the motion. On appeal, the Court in *Holt* held that the defendant in the contempt proceeding had a right to file motions and pleadings essential to present claims and raise relevant issues. In addition, the Court found that the allegations made in the motions were wholly appropriate to charge bias. *Holt*, 381 U.S. at 136, 14 L. Ed. 2d at 293, 85 S. Ct. at 1378.

We do not read *Holt* as extending to the ability of a party to cause a discovery subpoena to be issued to a presiding judge once that judge has ruled that such a subpoena would be improper. The Court in *Holt* explicitly noted that the petitioners were not charged with disobeying a valid court order. (*Holt*, 381 U.S. at 136, 14 L. Ed. 2d at 293, 85 S. Ct. at 1377-78.) We are aware that defendant believed that issuance of the subpoena was required to preserve the issue for appeal and therefore was in the best interest of his clients. We do not believe that issuance of the subpoena was necessary, and we consider that defendant's actions overstepped the bounds of strenuous and persistent advocacy. In the motion for substitution of judge, defendant presented his clients' assertion that it was crucial that Judge Keenan testify concerning the October 8, 1986, hearing. Unlike the situation in *Holt*, therefore, the relevant issue had already

been raised. Yet defendant did not request that Judge Keenan certify a question of law for an interlocutory appeal pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308). Nor did defendant seek leave to cause a discovery subpoena to be issued to Judge Keenan, citing authority in favor of his request. Defendant instead placed himself in a posture directly contrary to Judge Keenan's ruling, in an inappropriate attempt to trigger the procedural mechanism for its review.

## II

Having concluded that defendant's conduct was contumacious, we must next consider whether the procedures followed at the contempt hearing were sufficient to satisfy the requirements of due process. A contemnor's due process rights may be severely restricted if the contumacious act takes place in open court and within the presence of the judge, and if immediate punishment of the contemnor is essential to prevent the demoralization of the court's authority before the public. (*In re Oliver* (1948), 333 U.S. 257, 275, 92 L. Ed. 682, 695, 68 S. Ct. 499, 509; *Cooke v. United States* (1925), 267 U.S. 517, 534-35, 69 L. Ed. 767, 773, 45 S. Ct. 390, 394.) In those instances, the proceeding may be conducted in a summary manner, without prior notice, written charge, plea, issue, or trial. (*Ex parte Terry* (1888), 128 U.S. 289, 309, 32 L. Ed. 405, 410, 9 S. Ct. 77, 81; *People v. Siegal* (1948), 400 Ill. 208, 211.) Once it is decided that invocation of the summary contempt power is not warranted, however, guarantees of due process require "that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by

way of defense or explanation." *Oliver*, 333 U.S. at 275, 92 L. Ed. at 695, 68 S. Ct. at 508.

We believe that the present matter falls outside the narrow range of contempts that may be punished summarily. Here, the judge whose authority defendant flouted did not immediately cite defendant for contempt but instead issued an order to show cause and had the matter reassigned to a different judge for hearing. (See *Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 463-64, 27 L. Ed. 2d 532, 539, 91 S. Ct. 499, 504; *Cooke*, 267 U.S. at 539, 69 L. Ed. at 775, 45 S. Ct. at 395-96.) The delay in conviction and punishment of the contemnor demonstrates that the court was not required to act summarily so that it could maintain order and proceed with its business. (See *Taylor v. Hayes* (1974), 418 U.S. 488, 498, 41 L. Ed. 2d 897, 907, 94 S. Ct. 2697, 2703, quoting *Groppi v. Leslie* (1972), 404 U.S. 496, 504, 30 L. Ed. 2d 632, 639, 92 S. Ct. 582, 587.) Defendant was therefore entitled to the rights guaranteed by the due process provisions of the Federal and State Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). See *Harris v. United States* (1965), 382 U.S. 162, 164, 15 L. Ed. 2d 240, 242, 86 S. Ct. 352, 354 (summary contempt power limited to misbehavior in the actual presence of the court).

Defendant argues that the contempt in the present case was indirect rather than direct and that the proceeding did not satisfy the requirements of due process. Defendant believes that the proceeding was defective because no prosecutor appeared on behalf of the State, because the trial judge improperly assumed the role of prosecutor at the hearing, because no evidence was presented against him in the hearing to establish his guilt beyond a reasonable doubt, and because he was denied his right to confront the witnesses against him. The State responds that, even if defendant's actions did not

warrant invocation of the summary contempt power, the hearing was valid and defendant was provided sufficient opportunity to assert any defense he might have.

We conclude that the present proceeding satisfied the requirements of due process. The order to show cause issued by Judge Keenan notified defendant of the charges against him. At the contempt hearing, the defendant appeared with counsel, and he was afforded the opportunity to explain the reasons for his actions and to present any defense he might have. Defendant exercised those rights, offering testimony and argument in support of his position.

In the circumstances here, there was no need that the matter be presented through a prosecutor. The charge against defendant was properly before the court on Judge Keenan's order to show cause. The records and transcripts of the underlying action, of which the trial court was authorized to take judicial notice (see *City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, 249), provided the necessary proof of defendant's guilt; there was no need to submit further evidence to establish the charge. In addition, the subpoena demonstrated on its face that defendant caused its issuance; any doubt whether defendant had requested its issuance was, of course, eliminated by defendant's own statements, first before Judge Keenan and later at the contempt hearing, acknowledging that he had done so. (See *People v. Sears* (1971), 49 Ill. 2d 14, 32.) Nor can it be said that the trial judge improperly assumed a prosecutorial role by questioning defendant at the contempt hearing. (See *People v. Wesley* (1959), 18 Ill. 2d 138, 155 (court may question witness to elicit truth or clarify issue).) In the present case, the trial judge specifically advised defendant that the court would not act as prosecutor during the contempt proceeding, and the questions asked by the judge were intended only to clarify certain issues in the case.

We must also reject defendant's contention that he was denied an opportunity to confront the witnesses against him. No witnesses were necessary to establish the contempt, and none were presented. As we have indicated, the defendant's conduct before Judge Keenan was a matter of record, and that evidence was properly before the court at the contempt hearing. Under the circumstances of this case, the trial judge could find the defendant guilty beyond a reasonable doubt from the record at hand, without the submission of additional evidence. See *People v. Howarth* (1953), 415 Ill. 499, 508-09.

Citing *In re Marriage of Betts* (1989), 190 Ill. App. 3d 961, 966-67, defendant also argues that the contempt finding is void because the trial judge did not expressly state, either during the proceeding or in the written order, that defendant was guilty beyond a reasonable doubt. We find such a requirement unnecessary, at least when it is apparent from the proceedings, as it is here, that defendant's guilt was established by that standard of proof.

For the reasons stated, we conclude that defendant's conduct was sufficiently contumacious, in the circumstances shown here, to constitute contempt of court, and that defendant's contempt hearing satisfied the requirements of due process. The judgment of the appellate court, which affirmed the judgment of the circuit court of Wabash County, is therefore affirmed.

*Judgment affirmed.*