THE PEOPLE *ex rel.* ROLAND W. BURRIS, Attorney General of Illinois, Plaintiff-Appellee, v. ROBERT D. MARAVIGLIA, Defendant (Alvin R. Becker *et al.*, Contemnors-Appellants).

First District (6th Division)    No. 1—92—0347

Opinion filed December 23, 1993.—Rehearing denied February 1, 1994.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker, Miles N. Beerman, Howard A. London, and Joel M. Horwich, of counsel), for appellants.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

Appellants Alvin R. Becker and the law firm of Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London (hereinafter Beermann, Swerdlove) appeal from a civil contempt order entered in a consumer fraud action brought by the Attorney General of Illinois against defendant Robert D. Maraviglia. The trial court held appellants in contempt for their refusal to comply with an order requiring the submission of proposed findings of fact and conclusions of law. The appellants, who represented defendant Maraviglia in the consumer fraud case, based their noncompliance upon defendant Maraviglia's refusal to pay for additional legal services. Appellants also challenge the trial court's denial of their request to withdraw as counsel for Maraviglia in the case brought by plaintiff.

The record reveals that on July 13, 1987, the Attorney General of the State of Illinois filed a consumer fraud action against defendant Robert D. Maraviglia. The complaint alleged that defendant Maraviglia was a broker of printed classified advertisements under 13 business names and that he made misrepresentations to various advertisers and/or received payment for services not requested or not performed. On July 15, 1987, the law firm of Beermann, Swerdlove, Woloshin, Barezky, and Berkson by attorney Alvin Becker filed an appearance on behalf of defendant. Defense counsel also filed an answer which denied the substantive allegations in the complaint.

Over the next year, the parties engaged in discovery and other pretrial matters, including an unsuccessful attempt to settle the litigation. Between June 13, 1988, and March 9, 1989, a bench trial was conducted consisting of seven days of testimony and one hearing for admission of stipulated documents. In addition to the witnesses who testified in person at trial, approximately 12 evidence depositions were admitted by stipulation. and hundreds of exhibits and admissions of facts or documents were before the trial court.

After the parties rested on March 9, 1989, the trial court ordered the submission of post-trial memoranda, including proposed findings of fact and conclusions of law, in accordance with a specified date schedule. Counsel for defendant did not raise any objection to the filing of the memoranda. After the filing dates had been rescheduled twice, an agreed order was entered on May 5, 1989, which required the plaintiff to file its proposed findings of fact and conclusions of law by June 2, 1989, and required defendant to file his post-trial memorandum by July 7, 1989. Plaintiff was given until July 21, 1989, to reply, and the cause was set for decision on August 29, 1989. The plaintiff timely filed its proposed findings of fact and conclusions of law. Plaintiff's post-trial memorandum included a 52-page description of the evidence presented at trial as well as a summary of relevant legal authority. On July 5, 1989, the court granted plaintiff's motion to amend the pleadings to conform to the proof, and the deadline for filing of defendant's post-trial memorandum was suspended pending settlement discussions.

Over the next nine months, the cause was periodically continued for settlement status reports. On April 5, 1990, the trial court reinstated the uncompleted portion of the briefing schedule, granting defendant until May 20, 1990, to file his proposed findings of fact and conclusions of law. After several additional status dates, the trial court entered three orders granting defendant additional time to prepare his post-trial memorandum.

On December 18, 1991, attorney Joel Horwich appeared on behalf

of defendant and requested the right to proceed without filing proposed findings of fact and conclusions of law because defendant was unwilling to pay for preparation of the post-trial memorandum. The trial court denied this request, stating that the evidence adduced at trial was very complex, involving 30 to 40 entities, and that the trial had been concluded a long time ago for reasons which were not attributable to the court. The court indicated further that, in order to be fair, the court would be required to "build [the defendant's] case from scratch" to respond to the post-trial memorandum already filed by the plaintiff, unless defendant settled the case or agreed that the plaintiff would win. The court also stated that the defendant's refusal to pay for additional legal services had been brought up several months ago, and appellant Becker had indicated that he would prepare the post-trial memorandum. When Horwich stated that counsel was unable to locate their client, the trial court noted that further communications were unnecessary to prepare the proposed findings of fact and conclusions of law which were based upon the trial record. The court reiterated its previous orders, but extended the defendant's filing deadline to January 22, 1992.

On January 22, 1992, attorney Timothy Kelly appeared on behalf of defendant because Becker was out of town. Kelly indicated that the firm had filed a written motion to withdraw as counsel for defendant. According to Kelly, counsel attempted to serve defendant by mail, but the motion had been returned undelivered by the post office. A prior oral motion to withdraw had been denied by the court. Kelly stated that because there was a large outstanding balance owed by defendant, the firm of Beermann, Swerdlove was unable to perform any further services on behalf of defendant.

In response, the trial court stated that if counsel refused to file a post-trial memorandum, judgment would be entered in favor of the plaintiff. Kelly objected, pointing out that the court had heard evidence on disputed questions of fact. Thereafter, the court reiterated the prior orders requiring the submission of proposed findings of fact and conclusions of law on behalf of defendant. When defense counsel unequivocally stated that the firm would not file a post-trial memorandum, the court stated that counsel would be held in contempt for refusal to comply with a court order. The court explained further that a post-trial memorandum from defendant was necessary prior to issuing a decision because the court did not have a law clerk to assist in going through the evidence which involved 30 to 40 incidents and numerous entities under which defendant was doing business. The court stated that it was the obligation of defense counsel, as defendant's attorney and as an officer of the court, to go through the

evidence and build the defendant's case. The trial court expressed the view that it was not fair to the citizens of the county for the court to expend the time to perform work that should be done by defense counsel. The cause was continued to allow appellant Becker to personally appear before the court.

The written motion to withdraw alleged that defense counsel had not filed a post-trial memorandum because defendant moved without leaving a forwarding address and could not be found by counsel. The motion alleged further that in abstracting the trial testimony, counsel had expended in excess of $3,500 which would never be paid and that the preparation of the post-trial memorandum would result in an expense of at least an additional $2,500. Finally, the motion asserted that the trial court lacked authority to order counsel to perform services for which he would not be paid, and appellants declined to prepare the post-trial memorandum. The motion to withdraw was supported by a photocopy of an itemized statement issued by appellants to defendant Maraviglia on November 30, 1991. This statement reflected that Maraviglia had no previous balance, but owed a total of $3,610.55 for legal services and disbursements from March 26, 1990, through November 30, 1991.

On January 27, 1992, appellant Becker appeared before the trial court and requested leave to withdraw as counsel pursuant to his written motion which had been personally served upon the defendant at an address provided by counsel for the plaintiff. Becker stated that, as a matter of principle, courts should not have the authority to order the filing of post-trial memoranda in this type of case where the trial has been concluded and the memoranda amount to a written closing argument. In response, the trial court stated that, as a matter of principle, the attorneys, as officers of the court, have an obligation to conclude their cases and to see to the administration of justice. The court stated further that it should not be required to construct the defendant's case, and the assistance of counsel was needed to organize the material adduced at trial so that a ruling could be entered. The court denied the motion to withdraw as counsel and offered Becker additional time to file proposed findings of fact and conclusions of law. Becker then stated that a post-trial memorandum would not be filed on behalf of defendant, and the court held counsel in direct contempt for his refusal to comply with the court's order. Thereafter, the cause was continued to January 31, 1992, so a written contempt order could be prepared.

On January 31, 1992, defendant Robert Maraviglia and appellant Becker appeared personally before the court. Maraviglia indicated that he did not want to retain new counsel and stated that he had

moved, but had left a forwarding address and had been living in the same place since the trial began. When Maraviglia presented receipts for payments he had made for legal services and attempted to explain to the court his agreement as to payment for additional legal fees, Becker interrupted and stated "I don't want to bore [the court] with this *** I haven't received a payment in excess of two years, and I just don't want to get into this. It's not the Court's concern."

After presenting an abstract of the trial transcript which reduced to approximately 100 pages the witness testimony, documentary evidence, objections of counsel, and rulings by the court, Becker stated that his position had not changed and that he would not file a post-trial memorandum. Thereafter, the trial court denied defense counsel's renewed request for leave to withdraw and entered an order finding the firm of Beermann, Swerdlove, counsel of record, and Becker, as partner and primary attorney, in direct civil contempt of court. The contempt order issued by the court imposed a fine of $100 per day against Becker and Beermann, Swerdlove, commencing January 31, 1992, until counsel filed proposed findings of fact and conclusions of law on behalf of defendant. The order specifically provided that the post-trial memorandum was necessary to advise the court of defense counsel's theories of defense with respect to the fact issues and concluded that counsel's refusal to file a memorandum obstructed the administration of justice and tended to bring the administration of law into disrepute.

On February 3, 1992, Becker and Beermann, Swerdlove filed a notice of appeal challenging the contempt order and imposition of the fine. The notice of appeal did not refer to the denial of counsel's motion to withdraw. On February 6, 1992, this court granted appellants' motion for a stay of the contempt order and fine pending appeal.

We initially consider appellants' contention that the trial court erred in denying their motion to withdraw as counsel for defendant after the trial had been concluded and the proofs were closed.

We observe that the notice of appeal does not refer to the trial court's denial of the motion to withdraw, but challenges only the finding of contempt and the imposition of a fine of $100 per day. In addition, the contempt order from which the appeal was taken does not specifically address or dispose of counsel's motion to withdraw, but recites that the motion was denied on January 31, 1992. Because the notice of appeal does not assert as error the denial of the motion to withdraw, the plaintiff has argued that the propriety of this ruling is not properly before this court.

Yet, a notice of appeal is to be liberally construed and need only

inform the prevailing party in the trial court that the unsuccessful litigant seeks a review by a higher court. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380.) Where a notice of appeal fairly and adequately sets out the judgment complained of and the relief sought, advising the successful party of the nature of the appeal, it will be deemed sufficient. (*Burtell*, 76 Ill. 2d at 433-34.) An unspecified judgment may be reviewed if it directly relates to the judgment or order sought to be reviewed (*Burtell*, 76 Ill. 2d at 434) or is a step in the procedural progression leading to the judgment specified in the notice of appeal (*Burtell*, 76 Ill. 2d at 435, quoting *Elfman Motors, Inc. v. Chrysler Corp.* (3d Cir. 1977), 567 F.2d 1252, 1254).

■ In the case at bar, appellants would not have been held in contempt if the trial court had granted the motion to withdraw as counsel. Thus, the denial of the motion to withdraw was related to the finding of contempt and can be characterized as a step in the procedural progression leading to the contempt order. Accordingly, the denial of the motion to withdraw is subject to review by this court.

The Illinois Rules of Professional Conduct provide that an attorney may request permission to withdraw from pending cases where the client substantially fails to fulfill an agreement or obligation to the lawyer as to expenses or fees. 134 Ill. 2d R. 1.16(b)(1)(F).

■ Illinois Supreme Court Rule 13 requires that an attorney seeking to withdraw from a case notify the client and advise the client to obtain substitute counsel or to file an appearance within 21 days of the order permitting withdrawal. 134 Ill. 2d R. 13(c)(2).

The motion to withdraw filed by appellants did not comply with the requirements of Supreme Court Rule 13(c)(2) where it failed to advise defendant Maraviglia to obtain substitute counsel or to file an appearance within 21 days of an order permitting withdrawal. Because appellants' motion was inadequate under Rule 13(c)(2), the trial court did not abuse its discretion in denying the appellant's motion to withdraw. See *In re Marriage of Santa Cruz* (1989), 179 Ill. App. 3d 611, 621-22, 534 N.E.2d 636.

Moreover, we note that Supreme Court Rule 13 states that a motion to withdraw may be denied by the court if the granting of it would be inequitable. 134 Ill. 2d R. 13(c)(3).

In the instant case, the written motion to withdraw was not filed and served until January 22, 1992, almost two years after defendant Maraviglia allegedly stopped paying for legal services, almost three years after entry of the original order requiring post-trial memo-

randa, and after appellants had obtained at least five continuances in order to prepare the memorandum which had been promised to the court. The original date for filing defendant's post-trial memorandum was May 4, 1989. This deadline was subsequently continued and rescheduled five times to May 20, 1990, August 1, 1991, November 4, 1991, December 18, 1991, and finally to January 22, 1991. Each of these continuance dates was after Maraviglia allegedly stopped paying for appellants' services which, according to appellants, occurred in March 1990. Examination of the record before this court reveals that the first time appellants raised an objection to the filing of the post-trial memorandum was on December 18, 1991. It appears, therefore, that no objection was made from April 1990, when the settlement negotiations were concluded unsuccessfully, to December 1991. During this time, the defendant's filing date was continued at least three times without objection by appellants. Indeed, the trial court's comments indicate that it was aware of a fee dispute between appellants and their client, but appellant Becker had indicated that he would submit the post-trial memorandum on behalf of defendant.

In addition, the billing statement which supported the motion to withdraw was dated November 30, 1991, and reflected that Maraviglia had no previous balance, but owed a total of $3,610.55 for legal services and disbursements from March 26, 1990, through November 30, 1991. From the face of this statement, it appears that appellants had not billed Maraviglia for services rendered during that 20-month period. Defendant Maraviglia personally appeared on January 31, 1992, and stated that he had left a forwarding address when he moved and had been living in the same place since the trial started. Maraviglia also presented receipts for payments he had made for legal services and attempted to explain to the court his agreement as to payment for additional legal fees. Contrary to statements made by counsel before this court, we have found no evidence in the record that Maraviglia told defense counsel not to do any more work or that he would not pay for any additional legal services.

The trial court repeatedly stated that in order to render a decision, it required defendant's proposed findings of fact and conclusions of law, including defendant's theory of defense as to each incident/complainant. The record indicates that the trial court believed it would be unable to render a fair and just ruling without "building the defendant's case from scratch." The court indicated further that, even after the fee dispute had been discussed, Becker had stated that he would prepare the post-trial memorandum. Contrary to appellants' claim that no inequity would result from his withdrawal, it is evident that the trial court believed that it would be unfair and would

interfere with the administration of justice if the court was required to comb the trial record and prepare the post-trial memorandum on behalf of defendant.

It was within the trial court's discretion to deny the motion to withdraw (*Custom Builders, Inc. v. Clemons* (1977), 52 Ill. App. 3d 399, 402, 367 N.E.2d 537), and we hold that it was not an abuse of the court's discretion to deny appellants' motion under these circumstances.

We next address appellants' claim that the trial court erred in holding them in direct civil contempt for their refusal to submit proposed findings of fact and conclusions of law after the trial was concluded and the defendant refused to pay for additional legal services.

A court possesses inherent power to enforce its orders by way of contempt (*In re G.B.* (1981), 88 Ill. 2d 36, 41, 430 N.E.2d 1096; *In re F.B.* (1990), 206 Ill. App. 3d 140, 152, 564 N.E.2d 173), and that inherent power authorizes a court to punish, as contempt, conduct that is calculated to impede, embarrass, or obstruct the court in its administration of justice or derogate from the court's authority or dignity, or to bring the administration of the law into disrepute (*People v. Ernest* (1990), 141 Ill. 2d 412, 421, 566 N.E.2d 231; *People v. Buckley* (1987), 164 Ill. App. 3d 407, 411, 517 N.E.2d 1114). A court order entered within the proper exercise of jurisdiction, even if erroneous, must be obeyed until it is modified by the trial court or reversed on appeal. *Ernest*, 141 Ill. 2d at 424.

A showing that an order of the trial court was merely erroneous is no defense to a contempt citation for disobedience of the order, and a finding of contempt will be vacated only where the court's order is shown to be void *ab initio*. (*Buckley*, 164 Ill. App. 3d at 412.) A determination of contempt will not be disturbed unless there has been an abuse of discretion by the trial court. (*Buckley*, 164 Ill. App. 3d at 412.) An appeal from a contempt order requires the reviewing court to examine the propriety of the underlying orders which ultimately resulted in the finding of contempt. *People v. Shukovsky* (1988), 128 Ill. 2d 210, 222, 538 N.E.2d 444; *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 174, 429 N.E.2d 483.

An attorney engaged in litigation owes a duty to the court to assist it in the expeditious consideration and disposal of cases. *Buckley*, 164 Ill. App. 3d at 413; *People v. Pincham* (1971), 3 Ill. App. 3d 295, 297, 279 N.E.2d 108.

Appellants contend that the finding of contempt must be vacated where the trial court had no authority to order them to submit the post-trial memorandum. In support of this contention, appellants al-

lege that when the contempt order was entered, the cause was ripe for decision and that the trial court had all that was needed, in the form of its trial notes, the plaintiff's post-trial memorandum, and the abstract submitted by appellants, to render a decision.

■ Yet, the trial court stated on more than one occasion that due to the complexity of the litigation and the vast number of incidents and business entities at issue, proposed findings of fact and conclusions of law from defendant were required so the court would be informed of the theory of defense for each incident and/or entity involved. This information would not be apparent in its trial notes or the trial abstract and certainly would not be presented in the plaintiff's post-trial memorandum. Without defendant's memorandum, the trial court would be obligated to formulate factual and legal arguments as to why the evidence might support a decision in favor of defendant Maraviglia and against the plaintiff. The magnitude of this task was increased by the number of incidents and business entities involved in the litigation. Thus, contrary to appellants' assertion, the trial court did not have access to all of the information necessary for it to render a fair and just ruling. The trial court ordered defense counsel to submit the post-trial memorandum so that the litigation could be brought to a just and timely conclusion. This order constituted a requirement that counsel assist the court in the expeditious consideration and disposal of the case. (See *Buckley*, 164 Ill. App. 3d at 413.) Appellant Becker was the partner and attorney who was primarily responsible for the representation of Maraviglia in the action brought by the attorney general. Becker unequivocally refused to comply with the court's order requiring the filing of the post-trial memorandum. Becker's refusal in open court to comply with the trial court's order justified the finding of direct civil contempt. *In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 47, 558 N.E.2d 404.

■ Appellants correctly assert that a contempt order will be vacated on appeal where the record shows that the party held in contempt was merely trying to obtain appellate review of a decision he believed in good faith to be of a questionable nature. (*Silverstein*, 87 Ill. 2d at 171-72; *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 848, 522 N.E.2d 273.) Appellants urge this court to vacate the finding of contempt because they were merely attempting to seek appellate review by refusing to comply with the order requiring the filing of the post-trial memorandum. This argument is not, however, supported by the record before us.

As we have noted above, the written motion to withdraw was not filed and served until January 22, 1992, almost two years after defen-

dant Maraviglia allegedly stopped paying for legal services, almost three years after entry of the original order requiring post-trial memoranda, and after appellants had obtained at least five continuances in order to prepare the memorandum which had been promised to the court. Each of the continuance dates was after Maraviglia allegedly stopped paying for appellants' services, and the first time appellants raised an objection to the filing of the post-trial memorandum was on December 18, 1991. No objection was made from April 1990 to December 1991, and the trial court's comments indicate that Becker had promised to submit the post-trial memorandum notwithstanding the fee dispute with Maraviglia. Despite appellants' claim to the contrary, we do not believe the record establishes that the refusal to submit the post-trial memorandum was solely for the purpose of obtaining appellate review of an order believed, in good faith, to be of a questionable nature.

■ Appellants also claim that it was error for the court to hold the firm of Beermann, Swerdlove in contempt for the refusal to file the post-trial memorandum. The record establishes that appellant Becker was the partner and attorney who had primary responsibility for the representation of defendant Maraviglia. Although Becker unequivocally refused to comply with the court's order, no other partner appeared before the court and expressed a refusal, on behalf of the firm, to comply with the order. Although two other attorneys appeared before the court in Becker's absence and presented the same position as that voiced by Becker, these two attorneys were associates rather than partners. Becker stated that, in refusing to comply with the court's order, he was speaking for himself and did not believe he was speaking for his firm. The record does not contain any evidence that the entire firm had adopted or acquiesced in the position taken by Becker. Direct contempt consists of contemptuous conduct which occurs in the presence of the court. (*In re Marriage of Betts*, 200 Ill. App. 3d at 47.) A finding of direct civil contempt is justified where a party appears before the court and demonstrates disobedience to directives of the court or refuses to comply with previously entered court orders. (*In re Marriage of Betts*, 200 Ill. App. 3d at 47.) Because appellant Becker was the only partner of the firm who appeared before the court and refused to comply with the order, we hold that the court abused its discretion by extending the contempt finding to the entire firm.

For the foregoing reasons, the order denying appellants' motion to withdraw is affirmed; the order holding appellant Becker in direct civil contempt is affirmed; the order holding appellant Beermann,

Swerdlove, Woloshin, Barezky, Becker, Genin & London in direct civil contempt is vacated.

Affirmed in part; vacated in part.

EGAN and RAKOWSKI, JJ., concur.